## Schrader *v.* Beatty, Appellant.

*Master and servant—Payment—Presumption—Housekeeper.*

The rule that there is a presumption that domestics are regularly paid, weekly, biweekly or monthly, according to the custom of the locality in which they render services to their employers, has no application when the head of the house assumes relations of intimacy with his servant, and takes a girl employed by him out riding, and by what he says and does indicates an intention to marry her. In such a case, the strict rule applicable to purely business relations cannot be invoked by the master, for the intimacy of his personal relations with his servant necessarily involves him in laxity in his business relations with her.

Argued Feb. 2, 1903. Appeal, No. 141, Jan. T., 1902, by defendant, from judgment of Superior Court, Oct. T., 1901, No. 179, reversing judgment of C. P. Montgomery Co., March Term., 1900, No. 148 in case of Emma Elizabeth Schrader v. James Beatty, Administrator of Samuel R. Beatty, Deceased. Before MITCHELL, DEAN, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Appeal from the Superior Court.

The facts appear by the opinion of the Supreme Court, and by the report in 19 Pa. Superior Ct. 212.

*Error assigned* was the judgment of the Superior Court.

*Montgomery Evans*, with him *John Eckstein Beatty*, *John M. Dettra* and *James B. Holland*, for appellant.

*N. H. Larzelere*, with him *Gilbert Rodman Fox* and *M. M. Gibson*, for appellee.

OPINION BY MR. JUSTICE BROWN, May 18, 1903:

Judgment was entered for the defendant by the court below, non obstante veredicto, because it was of opinion that the presumption that the plaintiff had been paid by the decedent in his lifetime had not been overcome. On appeal to the Superior Court, the judgment so entered was reversed, and the judgment there was for the plaintiff on the verdict, because that court was of opinion that sufficient evidence had been submitted to the jury to justify their finding that the presumption had been overcome that the plaintiff had been paid, and for the additional reason that "upon the testimony her personal relations to the decedent can scarcely be regarded as those of a servant conclusively presumed in first instance to have received periodic payments during her employment." On this appeal we will consider only the question whether the relations of the appellee to the deceased were of such a character as to take the case out of the general rule that the wages of servants are presumed to be regularly paid.

The plaintiff's claim, as set forth in the statement of her cause of action, is for services rendered as housekeeper for the decedent, and if the evidence submitted showed that they were those simply of housekeeper, and that she sustained no other relation to the decedent, the judgment of the court below would have to be sustained under the authority of Taylor v. Beatty, 202 Pa. 120, where our Brother MESTREZAT, speaking for all of us, said: "It is the character of the services rendered and not the term applied to the person performing them that determines whether or not she is a servant within the rule that a servant's wages are presumed to be paid periodically. It is

immaterial that the employee is called a housekeeper. That term does not definitely define the duties of the servant, nor is its meaning sufficiently certain to exclude extrinsic evidence as to the services actually performed by the employee. One of the standard English dictionaries defines a housekeeper to be ' a woman who oversees the work and servants in a house, either as a mistress or as an upper servant.' As said by Mr. Justice PECKHAM in delivering the opinion of the court in Edgecombe v. Buckhout, 146 N. Y. 332,* 'Generally speaking, we know that the term housekeeper has reference to services performed in the taking care of a house in connection with the inmates residing therein, but exactly what special and particular duties are to be regarded as embraced within the term must almost always be decided by the duties which are actually performed under the agreement as made.' "

According to the testimony submitted to the jury, the relation of this plaintiff to the decedent was different from that sustained by him to Sarah Jane Taylor, the appellant in the case referred to. In charging the jury, the learned trial judge instructed them that, in determining the question whether the presumption had been overcome that the plaintiff had been paid, they should take into consideration the relations that existed between her and the decedent. He said among other things : "What were their relations? How did he treat her? What did he think of her?" In the same connection he called attention to the testimony that the decedent contemplated marrying her, one witness having testified that he said : " She will be all right some day anyhow. She will be mine." While we will not impair, but always enforce, the rule that there is a presumption that domestics are regularly paid, weekly, biweekly or monthly, according to the custom of the locality in which they render services to their employers, it can have no application when the head of the house assumes relations of intimacy with his servants, taking a girl employed by him out riding into the parks, and, by what he says and does, indicates an intention to marry her. In such a case, the strict rule applicable to purely business relations cannot be invoked by the master, for the intimacy of his personal relations with his serv-

---

* Also reported in 46 N. E. Repr. 991.    Reporter.

ants necessarily involves him in laxity in his busineas relations with them. An illustration of the truth of this is found in the present case. Instead of paying the plaintiff regularly, there must have accumulated in the hands of the decedent at one time the sum of $93.00, which he paid for a set of furniture for her. The testimony of B. D. Block as to this is: "Mr. Beatty came to our store to select some furniture and looked all around. We did not have anything to suit him. He said he wanted a solid mahogany set. I offered to go to the factory in Philadelphia with him. I went to see him in Conshohocken. He then called Miss Schrader. He said it was Lizzie's, she was buying it. He and Miss Schrader and I went to Philadelphia and selected a set. I sent the bill to Mr. Beatty and he paid it. It was $93.00. The bill was dated November 25, 1896." At another time the decedent paid $100 to a physician for professional services rendered to the plaintiff.

The finding of the jury having been in favor of the plaintiff, we must assume that they not only believed the testimony as to the relations between her and the deceased, but that the intimacy was of such a character as to overcome the presumption that she had been paid. The instruction of the learned trial judge should have been, not that the jury might regard the relations between the parties as sufficient to overcome the presumption of payment, but that, if the testimony was believed, the case was taken out of the rule that the master is presumed to regularly pay his servants at stated periods. This rule is for the protection of a master and his estate, and is never relaxed when the relation between him and his employee are those purely of master and servant ; but, when he establishes and maintains new and different relations to his servant during the continuance of the service, he himself takes his case out of the rule. There is no longer any reason for its application. The presumption that servants are regularly paid naturally arises from the general custom of regularly paying them at stated periods, when the relations between them and their employer are of the ordinary character of master and servant. The servant, as a rule, needs his money as he earns it, and the master knowing this, as a rule, pays him weekly or monthly. If he does not so pay without demand from the servant, the presumption is that the demand is made and that the master then pays.

But when, as in this case, a man makes a companion of the girl or woman in his employ, and, by what he says and does, indicates an intention to marry her, it is not natural that either he or she should longer regard the relations between them as of a strictly business character, involving prompt and regular payment for the services rendered. The freedom between them soon becomes freedom in their business relations, and the .presumption of regular payments and settlements disappears. In affirming the judgment of the Superior Court, .we repeat what we said in Ranninger's Appeal, 118 Pa. 20 : " The presumption of payment which might ordinarily arise in the case of a domestic servant would not, we think, be applicable in such a case."

The judgment of the Superior Court in favor of the plaintiff on the verdict for $1,316.60 is affirmed, which judgment will bear interest from March 25, 1901.